**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOOD RECOVERY NETWORK, INC.,<br>*Plaintiff/Counter Defendant*,<br>v.<br>MEANS DATABASE, INC.,<br>*Defendant/Counter Claimant*. | Civil Action No. 25 - 4307 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Food Recovery Network, Inc. ("FRN") commenced this action against Defendant MEANS Database, Inc., doing business as FoodRecovery.org ("MEANS"), in December 2025. ECF No. 1. FRN alleges willful infringement of its trademarks and unfair competition, in violation of both the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and District of Columbia common law. ECF No. 1 ¶¶ 55-86. MEANS filed an amended answer containing several affirmative defenses and three counterclaims. ECF No. 20. In its counterclaims, MEANS asserts that at least two of FRN's trademarks should be canceled and seeks a declaratory judgment that MEANS has not infringed any of FRN's trademarks. *Id.* at 28-30. Before the court is FRN's motion to dismiss MEANS's counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike several of MEANS's affirmative defenses under Rule 12(f). ECF No. 23. For the reasons explained below, the court grants FRN's motion to dismiss MEANS's second counterclaim but otherwise denies the motion.

## I. FACTUAL BACKGROUND

The court draws the following facts, accepted as true, from MEANS's statement of facts in support of its counterclaims, *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023), as supplemented by allegations in FRN's complaint, ECF No. 1. The court also takes judicial notice of information regarding federal trademark registrations that is publicly available on the U.S. Patent and Trademark Office's ("USPTO") official website. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 43 n.13 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018); *see also* Fed. R. Evid. 201(b)(2) ("[A] court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.").

MEANS is a non-profit organization founded in 2015. ECF No. 20, at 15. Its purpose is "to recover surplus food from restaurants, grocery stores, and events in order to redirect it to those who need it most." *Id.* at 1. MEANS initially consisted of an online platform that "connect[ed] organizations with surplus food to communities in need" and promoted sustainability by "diverting edible food to those in need away from landfills." *Id.* at 18. In 2023, it received grant funding from the U.S. Department of Agriculture to expand its pilot "Community Meal Program," which involved paying restaurants to provide meals to non-profit organizations serving local communities across the country. *Id.* at 19. MEANS expanded substantially, recovering and redistributing more than 52 million pounds of food and supplies in 2023 and over 81 million pounds of food in 2024. *Id.* at 20.

In 2024, MEANS rebranded as "FoodRecovery.org" to "reflect[] its mission and vision more clearly." *Id.* In 2026, it registered a wordmark for "FOODRECOVERY.ORG" under

Class 35 (“Charitable services, namely, coordination of the procurement and distribution of food donations from manufacturers, wholesalers, retailers, etc.”) and Class 43 (“Charitable services, namely, providing food to needy persons”). FOODRECOVERY.ORG, Registration No. 8,198,619.

FRN is also a non-profit. ECF No. 20, at 3. FRN describes itself as “a charity that helps recover surplus food to feed persons experiencing hunger in the United States.” ECF No. 1 ¶ 1. FRN has five active trademarks relevant to this case. ECF No. 21. First, in 2013, FRN registered a trademark for its slogan (“FIGHTING WASTE. FEEDING PEOPLE.”) under Class 43 (“Charitable services, namely, providing food to needy persons”). *See* FIGHTING WASTE. FEEDING PEOPLE., Registration No. 4,405,965.[1] That same year, it registered a design mark for its logo, displayed below, under both Class 43 and Class 35 (“Advocacy services, namely, providing public advocacy to promote awareness of providing food for the needy”):

FOOD RECOVERY NETWORK, Registration No. 4,387,249.[2] In 2017, FRN registered another design mark under Class 43:

---

[1] *Available at* https://perma.cc/9ERU-93KL (search by “Registration Number”).

[2] The mark consists of the words “FOOD RECOVERY NETWORK”, with the word “FOOD” having stylized letters “OOD” with interior portions which form a fork, a spoon, and a knife, respectively, and with the word “RECOVERY” having a stylized “O” which forms a recycle symbol. FOOD RECOVERY NETWORK, Registration No. 4,387,249.

FOOD RECOVERY VERIFIED, Registration No. 5,333,044.[3] Finally, in 2025, FRN registered two wordmarks for the phrase "FOOD RECOVERY NETWORK"—one under Class 43 and the other under Class 35. FOOD RECOVERY NETWORK, Registration No. 7,851,561 (Class 43); FOOD RECOVERY NETWORK, Registration No. 7,879,442 (Class 35).

## II. PROCEDURAL HISTORY

In December 2025, FRN commenced this civil action against MEANS, alleging unfair competition and willful infringement of FRN's trademarks. ECF No. 1. In February 2026, MEANS filed its first answer, ECF No. 17, and in March 2026, MEANS filed an amended answer with three counterclaims, ECF No. 20. Later that month, the parties stipulated to dismiss MEANS's third counterclaim, ECF No. 22, which the court granted, Apr. 3, 2026 Minute Order. FRN filed a motion to dismiss both of MEANS's remaining counterclaims and to strike several of its affirmative defenses, ECF No. 23, which is fully briefed, ECF Nos. 23, 26, 30.

In April 2026, FRN also initiated a cancellation proceeding of MEANS's trademarks before the Trademark Trial and Appeal Board. Petition for Cancellation, *Food Recovery Network,*

[3] The color green is claimed as a feature of the mark. The mark consists of the words "FOOD RECOVERY VERIFIED", with the word "FOOD" having stylized letters "OOD" with interior portions which form a fork, a spoon and a knife, respectively, and with the word "RECOVERY" having a stylized "O" which forms a recycle symbol, wherein the color white represents background and is not claimed as a feature of the mark. FOOD RECOVERY VERIFIED, Registration No. 5,333,044.

*Inc. v. MEANS Database, Inc.*, No. 92,091,558 (T.T.A.B. Apr. 28, 2026), Dkt. No. 1. The Board has suspended the administrative cancellation proceeding pending a final determination of this civil action. Suspension Notice, *Food Recovery Network, Inc.*, No. 92,091,558 (T.T.A.B. July 27, 2026), Dkt. No. 5.

## III. LEGAL STANDARDS

### A. Motion to Dismiss Counterclaims

"The same standards govern a motion to dismiss with respect to an opposing party's counterclaims" as a typical motion to dismiss under Rule 12(b)(6). *Wharf, Inc. v. District of Columbia.*, 232 F. Supp. 3d 9, 16 (D.D.C. 2017); *see Presidential Bank, FSB v. 1733 27th St. SE LLC*, 271 F. Supp. 3d 163, 169 (D.D.C. 2017). Specifically, under Rule 12(b)(6), the court will dismiss a claim that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint—or, as here, in the counterclaims—as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 45 F.4th 324, 329-30 (D.C. Cir. 2022) (reviewing the district court's grant of a motion to dismiss counterclaims and crossclaims under the same plausibility standard that governs a defendant's motion to dismiss a complaint). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further

factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a pleading fails to state a claim, a court may consider only the facts alleged in the pleading, "any documents either attached to or incorporated in the [counterclaim], and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (second alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While "'[t]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion,' . . . a motion to strike is a drastic remedy that courts disfavor." *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011) (quoting *Naegele v. Albers*, 355 F. Supp. 2d 129, 142 (D.D.C. 2005)); *see* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1380 (3d ed. 2026) ("Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted."). Courts in this district will strike an affirmative defense only "where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense." *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 150 (D.D.C. 2009); *see Wash. Metro. Area Transit Auth. v. 6,627 Square Feet of Land*, No. 21-CV-1753, 2022 WL 2438549, at *10 (D.D.C. July 5, 2022); *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 4

(D.D.C. 2015). "[E]ven where the defense presents 'a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike.'" *United States v. DynCorp Int'l LLC*, 282 F. Supp. 3d 51, 55 (D.D.C. 2017) (quoting 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1381 (3d ed. 2011)).

## IV. DISCUSSION

FRN moves to dismiss MEANS's two remaining counterclaims. MEANS's first counterclaim seeks invalidation of two of FRN's trademarks as generic, ECF No. 20, at 28, and FRN argues that the counterclaim fails because (1) MEANS relies on internally inconsistent theories; and (2) MEANS fails to sufficiently allege that the "FOOD RECOVERY NETWORK" wordmark is generic as to both classes under which it is registered, ECF No. 23, at 11-17. In its second counterclaim, MEANS seeks a declaratory judgment that it has not infringed FRN's trademarks, ECF No. 20, at 29, and FRN argues that the court should decline to exercise its discretionary jurisdiction over this counterclaim because it is a "mirror image" of FRN's affirmative case, ECF No. 23, at 17-21. FRN also moves to strike five of MEANS's affirmative defenses, arguing that its second and third defenses (both of which pertain to the validity of FRN's trademarks) suffer from the same defects that doom MEANs's first counterclaim, ECF No. 23, at 22-24, and that MEANS's fourth, fifth, and eighth defenses are insufficiently supported by its factual pleadings, *id.* at 24-25. The court addresses each argument in turn.

### A. MEANS's First Counterclaim

In its first counterclaim, MEANS argues that "at least" two of FRN's trademarks should be canceled because the term "food recovery" is generic and thus not protectable. ECF No. 20, at 28. MEANS accordingly seeks invalidation of FRN's Trademark Registration Nos. 7,879,442

and 7,851,561, both of which cover the term "FOOD RECOVERY NETWORK." *Id.*; *see* ECF No. 1 ¶ 21. FRN has moved to dismiss this counterclaim for two reasons: (1) that MEANS's genericness counterclaim is "factually inconsistent" with its answer; and (2) that MEANS fails to plausibly allege that the term "food recovery" is generic for either of the two services for which FRN registered the term. ECF No.23, at 11-17. The court disagrees with both arguments.

"The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness." *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C. Cir. 1989). Courts have categorized trademarks into four general categories in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* The least distinct category consists of generic terms, describing those "commonly used to denote a product or other item or entity, one that indicates the thing itself, rather than any particular feature or exemplification of it." *Id.* "A generic name—the name of a class of products or services—is ineligible for federal trademark registration." *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 551 (2020). Accordingly, a party may seek cancellation of a trademark "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C. § 1064(3); *see Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 195 (1985). That said, the Lanham Act provides that federal registration of a trademark "shall be prima facie evidence of [its] validity." 15 U.S.C. § 1115(a). "Thus, the party challenging the validity of a registered trademark must present evidence sufficient to overcome the presumption that the trademark is valid." *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009).

"[W]hether a term is generic depends on its meaning to consumers"—that is, "whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of

distinguishing among members of the class." *Booking.com B.V.*, 591 U.S. at 560-61; *see* 15 U.S.C. § 1064(3) ("The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used."). Courts routinely recognize that the question "'[w]hether a mark is generic is a question of fact,' that is generally not properly determined on a motion to dismiss." *Caveman Foods, LLC v. Lester*, No. 12-CV-1587, 2013 WL 12172626, at *3 (N.D. Cal. Feb. 14, 2013) (quoting *Yellow Cab of Sacramento v. Yellow Cab of Elk Grove*, 419 F.3d 925, 929 (9th Cir. 2005)); *see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, *LLC*, 241 F. Supp. 3d 461, 478 (S.D.N.Y. 2017) (denying motion to dismiss a genericness claim as "premature" despite "harbor[ing] serious doubts" that the plaintiffs would succeed); *Trademark Rightsholder Identified in Ex. 1 v. Individual, P'ships, & Unincorporated Ass'ns, Identified on Schedule A*, No. 23-CV-16216, 2024 WL 4382195, at *1 (N.D. Ill. Oct. 2, 2024) (noting that "'[w]hether a term is generic or can be trademarked is a question of fact' not suited for review at the motion to dismiss stage" (alteration in original) (quoting *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 300 (7th Cir. 1998), *overruled on other grounds*, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001))).

**1. Alleged inconsistency between MEANS's counterclaim and answer**

FRN first argues that "MEANS's counterclaim that 'food recovery' is generic fails because it is inconsistent with MEANS's Answer and trademark applications." ECF No. 23, at 12. According to FRN, the court should dismiss MEANS's counterclaim because MEANS simultaneously (1) argues that "food recovery" is a generic term which renders the trademark "FOOD RECOVERY NETWORK" generic and unprotectable, and (2) seeks trademark protection for the wordmark "FOODRECOVERY.ORG." *Id.* MEANS argues that there is no inconsistency

that warrants dismissal. *See* ECF No. 26, at 9. The court concludes that dismissal is not appropriate at this stage.

First, there is no internal inconsistency between MEANS's positions that the phrase "food recovery" is generic in its ordinary use, that the mark "FOOD RECOVERY NETWORK" is also generic and warrants invalidation, and that the mark "FOODRECOVERY.ORG" is not generic. *Booking.com B.V.*, 591 U.S. at 549, is instructive on this point. In *Booking.com B.V.*, the parties agreed that the word "booking" is generic for hotel-reservation services. *Id.* at 551. The USPTO maintained that because "booking" was generic, "Booking.com" must also be generic because ".com" is a generic top-level domain. *Id.* But the Supreme Court rejected that general rule and instead explained that "for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation." *Id.* at 556. Thus, even when both aspects of a compound term are generic, the compound term may not be generic to consumers. As the Court put it, "if 'Booking.com' were generic," one might expect "that a consumer, searching for a trusted source of online hotel-reservation services, could ask a frequent traveler to name her favorite 'Booking.com' provider." *Id.* at 557. Because consumers did not perceive the term "Booking.com" in such a way, the Court held that it was not a generic term. *Id.* MEANS thus has at least a reasonable basis to argue that "FOODRECOVERY.ORG" is distinct based on consumer perception while seeking invalidation of FRN's trademarks as generic.[4]

[4] FRN cites a 2008 out-of-circuit case in a footnote to suggest that courts disregard the domain ".org" when evaluating distinctiveness. ECF No. 23, at 14 n.7; *see Dudley v. HealthSource Chiropractic, Inc.*, 585 F. Supp. 2d 433, 440 n.4 (W.D.N.Y. 2008). But that argument is inconsistent with the Supreme Court's subsequent clarification of the core principle that "the distinctiveness inquiry trains on a term's meaning as a whole, not its parts in isolation." *Booking.com B.V.*, 591 U.S. at 556.

To be sure, MEANS's pleading is no model of clarity: while MEANS seeks cancellation of the "FOOD RECOVERY NETWORK" trademarks, it chiefly focuses on the phrase "food recovery" rather than "food recovery network." *See* ECF No. 20, at 20-28. And FRN is correct that a term "cannot be both generic and not generic, based solely upon who is using the term." ECF No. 30, at 3 (quoting *GMA Accessories, Inc. v. Dorfman-Pac. Co.*, No. 11-CV-3731, 2012 WL 899385, at *3 (S.D.N.Y. Mar. 16, 2012)). But MEANS does not allege that any particular term is both generic and not generic, so FRN's argument has little purchase here. And even if MEANS's claims and defenses contain factually inconsistent positions, that would not warrant dismissal at the pleading stage. *Cf. GMA Accessories, Inc.*, 2012 WL 899385, at *3 (denying both parties' motions for summary judgment where the plaintiffs claimed both that a specific term should be protected and that the defendants had conceded that the term was generic). At most, MEANS's counterclaim may function as an argument in the alternative.

Second, internal inconsistencies may warrant dismissal at the pleading stage only where a party pleads facts that render one or more of its claims self-defeating. FRN relies on out-of-circuit cases to argue that "[a] party should not set forth inconsistent . . . statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses.'" ECF No. 23, at 12 (alterations in original) (quoting *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007)). But that argument is beside the point. Federal Rule of Civil Procedure 8(d)(2) expressly permits a party "to set forth inconsistent statements either alternatively or hypothetically within a single count or defense, or in separate claims or defenses." 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1283 (4th ed. 2026). "Perfectly consistent with that principle is the notion that a pleader also may set forth inconsistent legal theories in his or her pleading and

will not be forced to select a single theory on which to seek recovery against the defendant." *Id.* The limit on this liberality arises where a party "must state allegations which are at odds with each other in order for it to make out all the elements of an individual claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 585 (2d Cir. 2005) (holding that a party's claim of mutual mistake in a contract case was "at war with itself" where the party had to establish simultaneously the other party's knowledge of and mistake with respect to the same underlying aspect of the contract).

FRN also relies on another out-of-circuit case in which the complaint contained core "internal factual inconsistencies" to support the notion that "[s]uch inconsistencies may cancel each other out and render the claim subject to dismissal." ECF No. 23, at 18 (alteration in original) (quoting *Fleeman v. County of Kern*, No. 20-CV-321, 2023 WL 8375658, at *16 (E.D. Cal. Dec. 4, 2023)). In *Fleeman*, the plaintiff raised a claim under a state law that "only protects employees who made actual disclosures of information about their employer's working conditions." 2023 WL 8375658, at *17. But the plaintiff had alleged in his complaint that he had made "merely hypothetical statements" about inappropriate workplace conduct. *Id.* at *16 (internal quotation marks omitted). The court explained that the plaintiff could not "have it both ways" and that the plaintiff's "repeated representations" that he had made only hypothetical statements "constitute[d] judicial admissions that he did not disclose any actual, factual conditions" in the workplace. *Id.* at *17 (internal quotation marks omitted). The court accordingly dismissed his claim. *Id*. That case has no bearing on this one because the tension that FRN points to is not an internally inconsistent factual allegation, but rather, at most, inconsistent legal arguments in MEANS's own

trademark application and in this case.[5] Such alleged inconsistencies are insufficient to warrant dismissal.

Nor does the court find relevant FRN's argument about MEANS's failure to disclaim the term "food recovery." *See* ECF No. 23, at 13-14. 15 U.S.C. § 1056(a) provides that a trademark applicant "may voluntarily disclaim a component of a mark sought to be registered," but nowhere does it oblige applicants to make such disclosures unless the USPTO Director "require[s] the applicant to disclaim an unregistrable component." MEANS could easily maintain both the position that "food recovery" is a generic term and the belief that it was unnecessary to disclaim the term in its initial trademark applications.

**2. Genericness for multiple uses**

FRN next seeks to dismiss MEANS's genericness counterclaim. In its counterclaim, MEANS alleges that FRN's "FOOD RECOVERY NETWORK" wordmarks are generic and thus not protectable. ECF No. 20, at 28. FRN argues that the court must dismiss the counterclaim because MEANS fails to sufficiently allege that the term "food recovery" is generic as both a charitable service (under Class 35) and a form of public advocacy (under Class 43). ECF No. 23, at 14-17. MEANS argues that it has sufficiently pleaded that the "FOOD RECOVERY NETWORK" wordmarks are generic for Classes 35 and 43. ECF No. 26, at 11-13. MEANS has the better argument.

---

[5] Because there is no inherent contradiction between MEANS's stance that "food recovery" is a generic term and its registration of the "FOODRECOVERY.ORG" wordmark, the court rejects FRN's final argument about MEANS's President's statement that he believed the trademark ought to be registered as wholly irrelevant. *See* ECF No. 23, at 13.

"In determining whether a term is generic, the critical issue is whether relevant customers primarily use or understand the term to refer to the genus of goods or services in question." *In re Bayou Grande Coffee Roasting Co.*, 160 F.4th 1370, 1374 (Fed. Cir. 2025). As explained above, "the fact-specific nature of this inquiry normally precludes courts from determining at the pleading stage whether a mark is generic." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 998 (N.D. Cal. 2014).

Here, MEANS has sufficiently pleaded that the "FOOD RECOVERY NETWORK" trademarks are generic as to both Classes 35 and 43. As MEANS explains, although Class 35 is focused on promoting public awareness while Class 43 is focused on providing charitable services, they are both centered on the same end as applied to FRN's marks: providing food to needy people. *See* ECF No. 20, at 27. MEANS argues that the terms "food recovery" and "food recovery network" are generic because a food recovery network is "an organization that promotes the recovery of food that would otherwise end up in a landfill to feed people dealing with hunger." *Id.* at 27-28. This definition could plausibly cover both the public awareness campaign and the literal provision of services associated with food recovery. In support of its argument, MEANS points to various similar organizations that use the terms "food recovery" to describe the service and "food recovery network" to describe the organization that provides the service. *See id.* at 22-25. Although it is far from clear that MEANS can ultimately demonstrate that consumers "primarily use or understand the term ['food recovery network'] to refer to the genus of goods or services in question," *In re Bayou*, 160 F.4th at 1374, the court sees no basis to reject MEANS's counterclaim at the pleading stage.

Indeed, only two of the cases that FRN cites involve dismissals of genericness claims on a motion to dismiss. Both present unusual circumstances inapplicable here. In the first case, the

counter-plaintiff had claimed that the term "skunk" was generic for a subcategory of "herbs for smoking," namely, cannabis. *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. 18-CV-2332, 2020 WL 1285837, at *3 (D. Ariz. Mar. 18, 2020). The court noted the uncontroversial principle "that a trademark registration is not susceptible to a genericness challenge simply because it is the generic name for something; rather, it must be the generic name for the particular goods listed in the trademark registration." *Id.* at *4. Because the USPTO had a "strong policy against authorizing registrations of unlawful goods" like cannabis, the term "skunk" could not have been generic as to the good for which the mark was registered. *Id.* at *3.

In the second case, the trademark at issue had been registered to encompass "over twenty different goods and services, including, but not limited to paper goods and printed matter, educational services, and streaming of video and digital material on the Internet." *Entrepreneur Media, Inc. v. Dermer*, No. 18-CV-1562, 2019 WL 4187466, at *6 (C.D. Cal. July 22, 2019). And the counter-plaintiffs had "merely assert[ed] that [the trademark] ha[d] become so common it [was] now generic." *Id.* (internal quotation marks omitted). The court "recognize[ed] that an analysis for whether a mark is generic is often a question of fact not generally suitable for a Motion to Dismiss." *Id.* at *7. But it nonetheless found that the counter-plaintiffs had "not adequately alleged how [the term] [could] simultaneously identify over twenty different goods and services" because they had provided only a "bare-bones, conclusory allegation that the mark [was] generic." *Id.*

MEANS's genericness counterclaim is neither legally impossible as in the first case nor threadbare and improbable as in the second. FRN thus fails to justify a deviation from the general rule that genericness claims should rarely be resolved at the motion-to-dismiss stage.

### B. Motion to Dismiss Declaratory-Judgment Counterclaim

FRN also moves to dismiss MEANS's request for a declaratory judgment of trademark non-infringement as "duplicative because [MEANS] seeks a determination on issues that will necessarily be decided when prosecuting FRN's claims." ECF No. 23, at 6. MEANS argues that its claim is not duplicative of FRN's infringement claims, ECF No. 26, at 14-15, and that dismissal would be premature, *id.* at 15.[6] The court agrees with FRN.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief could be sought." 28 U.S.C. § 2201(a) (emphasis added). "Even if the Court finds a case or controversy exists, it must still consider whether it is appropriate to exercise its discretion to grant declaratory relief in the instant case." *Gibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 78 (D.D.C. 2011). "In the D.C. Circuit, two criteria are ordinarily relied upon: 1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016).

"Where requests for declaratory relief simply 'bring[] into question issues that have already been presented in plaintiff's complaint and defendant's answer to the original claim, courts often exercise their discretion to dismiss the [redundant] counterclaim." *Trilogy Fed., LLC v. CivitasDX*

[6] MEANS also argues that the court "must" deny FRN's motion to dismiss this counterclaim because MEANS "satisfies the case-or-controversy requirement." ECF No. 26, at 14 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 118 (2007)). While neither party disputes that the case-or-controversy requirement is satisfied, *see* ECF No. 30, at 9, that addresses only the issue whether the court has jurisdiction to resolve MEANS's counterclaim, not whether it is "appropriate to exercise its discretion to grant declaratory relief," *Gibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 78 (D.D.C. 2011).

*LLC*, No. 24-CV-2713, 2025 WL 2651240, at *18 (D.D.C. Sep. 16, 2025) (alterations in original) (quoting *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010)); *see Madison Mech., Inc. v. Twin City Ins. Co.*, No. 17-CV-1357, 2018 WL 1583519, at *5 (D. Md. Mar. 30, 2018) ("If declaratory judgment counterclaims are the 'mirror image' of plaintiffs' claims, a court may dismiss them.").

Here, MEANS's counterclaim seeking a declaratory judgment of non-infringement is the "mirror image" of FRN's federal trademark infringement claim. MEANS seeks a judgment of non-infringement on several bases: that FRN lacks exclusive rights in its marks because the marks are generic or descriptive, that FRN lacks exclusive rights in the wordmarks including the terms "feed" and "people," and that MEANS's marks are not confusingly similar to FRN's marks. ECF No. 20, at 29. MEANS also asserts that it is entitled to a declaration that two of FRN's trademarks—the "FOOD RECOVERY NETWORK" wordmarks—are invalid because they are generic. *Id.*

These issues "have already been presented in plaintiff's complaint and defendant's answer to the original claims." *Trilogy Fed., LLC*, 2025 WL 2651240, at *18. To succeed on its federal trademark infringement claim, FRN "must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008) (quoting *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006)). Indeed, MEANS raises several affirmative defenses that will require the court to decide the validity of the contested marks. *See* ECF No. 20, at 14 (raising genericness as affirmative defense); *id.* at 14-15 (raising lack of distinctiveness); *id.* at 15 (arguing that the "FOOD RECOVERY

NETWORK" wordmarks are invalid). Thus, MEANS's argument that "[e]ven if FRN prevails on its infringement claims, that would not resolve whether the FOOD RECOVERY NETWORK word mark registrations are valid," ECF No. 26, at 14-15 (emphasis omitted), is incorrect. MEANS's counterclaim is redundant of both its own affirmative defenses and of the elements of FRN's claim. And courts routinely dismiss similar declaratory judgment counterclaims in intellectual property infringement suits. *See, e.g.*, *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 288 (E.D.N.Y. 2022) (concluding that "a declaration that [the counter-claimant] has not violated [the counter-defendant's] trademark rights is the mirror image of [the counter-defendant's] trademark infringement claim and should be dismissed because it will serve no useful purpose" (internal quotation marks omitted)); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) (dismissing declaratory judgment counterclaim because, "[o]nce the Court rules on the merits of [the plaintiff's infringement claim], the question of whether [the defendant] infringed upon [the plaintiff's] marks will be resolved in its entirety").

MEANS contends that dismissal would be "premature" because "it is too early in the case to know how this case will ultimately proceed." ECF No. 26, at 15. But in assessing FRN's claims and MEANS's affirmative defenses, the court will necessarily determine the validity of FRN's marks, and if those marks are valid, whether MEANS's marks are confusingly similar. *See Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1463 (Fed. Cir. 1984) (noting in the patent context that "[a] district court should decide validity and infringement and should enter a judgment on both issues when both are raised in the same proceeding"). "In these circumstances, the redundant counterclaims are simply superfluous and no exercise of the [c]ourt's permissive jurisdiction to hear the requests for declaratory relief is necessary." *Malibu Media, LLC v. Parsons*, No. 12-CV-1331, 2013 WL 12324463, at *10 (D.D.C. May 31, 2013); *see*

*Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 226 n.7 (D.D.C. 2012) (noting that a claim for declaratory relief was "boldly impermissible" because it "necessarily 'duplicate[d]' the elements of several of [the claimant's] other claims in this action and 'w[ould] be rendered moot by the disposition of th[ose] claims" (final alternation in original) (quoting *Boone*, 684 F. Supp. 2d at 12)).

Because MEANS "has made absolutely no showing that its counterclaim represents an independent case or controversy that would survive resolution of [FRN's] infringement claim one way or the other," *BWP Media USA Inc. v. Death Adders Inc.*, No. 13-CV-4435, 2015 WL 13653968, at *2 (E.D.N.Y. Apr. 6, 2015), the court dismisses MEANS's second counterclaim pursuant to Rule 12(b)(6).

### C. Motion to Strike Affirmative Defenses

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While "'[t]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion,' . . . a motion to strike is a drastic remedy that courts disfavor." *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011). Here, FRN moves to dismiss MEANS's second, third, fourth, fifth, and eighth defenses. The court addresses them in turn.

#### 1. Defenses Two and Three

MEANS's second and third affirmative defenses allege that FRN's claims are barred in whole or in part by "the doctrines of fair use and descriptive use" and "because its trademarks at issue are generic." ECF No. 20, at 14. FRN argues, as it did in its motion to dismiss MEANS's genericness counterclaim, that these defenses are "at odds with reality and with the positions that

MEANS is taking in this litigation." ECF No. 23, at 22-23. On FRN's telling, MEANS cannot argue that FRN's marks are descriptive or generic while simultaneously seeking protection for its "FoodRecovery.org" marks. *See id.* As explained above, MEANS's interest in seeking protection for its own marks is not inconsistent as a matter of law with its arguments that FRN's marks are generic or descriptive. *See supra* pp. 9-13. Whether or not MEANS ultimately prevails on its second or third affirmative defenses, neither rises to the level of "frivolous." *See DynCorp Int'l LLC*, 282 F. Supp. 3d at 55 (noting that "even when the defense presents 'a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike'" (quoting 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1381 (3d ed. 2011)).

**2. Defenses Four, Five, and Eight**

MEANS alleges in its fourth defense that FRN's claims are barred "because its trademarks have lost or lack distinctiveness," ECF No. 20, at 14; alleges in its fifth defense that FRN's claims are barred because the "FOOD RECOVERY NETWORK Word marks were descriptive and lacked secondary meaning at the time of [MEANS's] alleged first infringement," *id.* at 15; and alleges in its eighth defense that FRN's claims are barred by the doctrines of "waiver, acquiescence, laches, and/or estoppel" because FRN "knew or should have known of [MEANS's] use of FOODRECOVERY.ORG" yet "unreasonably delayed in bringing its claims against FRN and/or third party users" to MEANS's "substantial prejudice." *Id.*

FRN seeks to strike MEANS's fourth, fifth, and eighth affirmative defenses as conclusory on the basis that "MEANS only states legal doctrines without providing supporting facts." ECF No. 23, at 30-32. But it is "common practice in this court" for "each affirmative defense [to be] brief," often "no more than a sentence each." *Paleteria La Michoacana v. Productos Lacteos*, 905

F. Supp. 2d 189, 190 (D.D.C. 2012). Courts in this district have overwhelmingly recognized that the standard for pleading an answer under Federal Rule of Civil Procedure 8(c) is more lenient than the "plausibility" standard used to test the sufficiency of a complaint. *See Paleteria La Michoacana*, 905 F. Supp. 2d at 193; *see also Malibu Media*, 2013 WL 12324463, at *3 ("examin[ing] each affirmative defense to determine whether it sufficiently raises a question of fact or law relevant to the claim . . . that it is worthy of consideration as a defense"); *Moore v. United States*, 318 F. Supp. 3d 188, 193 (D.D.C. 2018) (finding a "one sentence" affirmative defense of contributory negligence to be sufficient to put plaintiffs on notice under Rule 8(c)); *Williams v. Fort Myer Constr. Corp.*, No. 23-CV-3466, 2025 WL 2779953, at *5 (D.D.C. Sep. 30, 2025) (concluding that a proposed amendment of a one-sentence affirmative defense would satisfy Rule 8(c)'s pleading requirement).

FRN raises one additional argument that the eighth affirmative defense is legally deficient. FRN asserts that waiver, acquiescence, laches, and estoppel each "require MEANS to show that FRN has taken (or failed) to take certain action against MEANS and its marks—not third parties and their marks," but that MEANS pleads these defenses based on FRN's actions with respect to third parties. ECF No. 30, at 14. The court concludes that FRN has failed to show the law is so settled as to render MEANS's affirmative defense frivolous. Indeed, the summary judgment opinion on which FRN principally relies indicates that a defendant may establish an acquiescence defense based on the plaintiff's representations to a third party (there, the USPTO). *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 79 (D.D.C. 2015). The court need not, and does not, resolve MEANS's affirmative defense at this early stage.

While the court agrees that MEANS bears the "ultimate burden of proving its affirmative defenses," ECF No. 20, at 12 (quoting *Paleteria La Michoacana*, 905 F. Supp. 2d at 193), the court concludes that none of the challenged defenses rises to the level of "irrelevant and frivolous" as would warrant the drastic remedy of striking the defense, *United States ex rel. Head*, 668 F. Supp. 2d at 150.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Counter Defendant's Motion to Dismiss and to Strike, ECF No. 23, is **GRANTED** to the extent that Counterclaim Two is **DISMISSED**, but the motion is otherwise **DENIED**. It is further **ORDERED** that Counter Defendant shall file an answer to Count One of Counter Claimant's Amended Answer and Counterclaims, ECF No. 20, on or before September 24, 2026, *see* Fed. R. Civ. P. 12(a)(4)(A).

LOREN L. ALIKHAN
United States District Judge

Date: September 10, 2026